THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LISA A. URBINA, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALEX J. FAHEY, Defendant-Appellant.

Second District   Nos. 2—07—0546, 2—07—0607 cons.

Opinion filed August 20, 2009.

Patricia Unsinn and Arianne Stein, both of State Appellate Defender's Office, of Chicago, for appellant Lisa A. Urbina.

Patricia Unsinn and Sarah Curry, both of State Appellate Defender's Office, of Chicago, for appellant Alex J. Fahey.

Louis A. Bianchi, State's Attorney, of Woodstock (Lawrence M. Bauer and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), and Paula Velde, of Chicago, for the People.

JUSTICE McLAREN delivered the opinion of the court:

In this consolidated appeal, defendants, Lisa A. Urbina and Alex J. Fahey, appeal their convictions of possession of a controlled substance with intent to deliver (720 ILCS 570/401(a)(2)(B) (West 2006)) and

sentences of eight years' imprisonment. On appeal, both defendants argue that the trial court erred by denying their motions to quash a search warrant and suppress the evidence seized by police during the search. Specifically, they aver that the police officers violated their fourth amendment rights by executing the search warrant at an apartment that was not listed on the warrant. We reverse.

Initially, we note that, in connection with the same set of facts, defendants were also charged in federal court with conspiracy to distribute five kilograms or more of cocaine (21 U.S.C. §§841(a)(1), 846 (2006)) and with using a telephone to facilitate the distribution of cocaine (21 U.S.C. §843(b) (2006)). The United States District Court, Judge Joan Lefkow presiding, granted defendants' motions to suppress evidence seized at the apartment building. *United States v. Fahey*, No. 07—CR—239—8 (N.D. Ill. January 29, 2008). The district court found that the police officers impermissibly used their discretion when executing the search warrant, knowing that it was ambiguous when they executed it. *Fahey*, slip op. at 6-8. Although we are not required to follow the district court's ruling, we believe Judge Lefkow's analysis is persuasive and we take judicial notice of the order (see *People v. Mata*, 217 Ill. 2d 535, 539-40 (2005)).

## I. FACTS

Prior to their separate trials, defendants independently filed motions to quash the search warrant and suppress the evidence obtained from the search. The search warrant authorized officers to search:

> "230 Crystal Street, *Apartment D*, Cary, McHenry County, Illinois being described as a multitenant, two-story apartment complex consisting of four apartments, with the entire building having grey siding with white trim and a roof with dark grey shingles, and the numbers 230 are affixed to the building above the main entrance with apartment *D* on the left top of the stairs with the *letter D* affixed to the door." (Emphases added.)

Defendants' motions argued that the search warrant authorized a search of "Apartment D" in the apartment building, but that the police actually searched apartment "C" where the evidence was found.

Special Agent Daniel Thomas of the North Central Narcotics Task Force of the Illinois State Police gave essentially the same testimony at the hearings for both defendants' motions. He testified that a confidential informant contacted him and told him that the informant was buying cocaine out of an apartment at 230 Crystal Street in Cary, Illinois (the apartment building). On two occasions, Thomas went to the apartment building with the informant, who engaged in two controlled drug buys. The apartment building had four apartments, two on the first floor and two on the second floor.

Thomas testified that during both controlled purchases on both occasions, he waited inside his car, approximately 50 feet away from the front of the apartment building, and watched the informant walk into the main entrance of the apartment building and up the stairs. Thomas could not see where the informant went after he walked up the stairs. Thomas saw children looking out the windows of the second-floor apartment on the left side of the building. He suspected that these children were "lookouts." Thomas also testified that he was concerned during one of the controlled purchases that the children were yelling about his presence.

Thomas testified that while he was observing the apartment building during the first controlled purchase, it was "nighttime," and there were lights on in the upstairs apartment on the left. He saw the blinds in the window of that apartment get "sucked" into the window around the time the occupants of the apartment would have opened and closed the door for the informant. After the informant completed the controlled purchases, he discussed the layout of the apartment building with Thomas. The informant told Thomas that the apartment where he bought the cocaine was apartment "D," was on the left at the top of the stairs, and had a blue door. The informant told Thomas that the identifiers on the doors were white stickers with black lettering. The informant told Thomas that the letters on the doors were "obscured somewhat with [blue] paint being rolled over it." However, the letters could still be seen through the paint.

Thomas testified that he filled out a complaint and affidavit for a search warrant. Both documents stated that the informant bought the cocaine in apartment "D," the apartment on the left at the top of the stairs. The search warrant was issued.

Thomas testified that on April 15, 2006, officers executed the search warrant and Thomas acted as the case agent overseeing the search. Thomas waited outside the apartment building while the other officers entered the building and went up the stairs. Before proceeding to an apartment to execute the search warrant, the officers stopped and asked Thomas to come to the second floor of the apartment building to identify the proper apartment to enter, because, contrary to the search warrant, apartment "D" was to the right, and apartment "C" was to the left. Thomas went to the second floor of the apartment building and saw the two doors marked "C" and "D" for the first time and told the officers to search apartment "C," which was to the left. Thomas had "no doubt" that when the search warrant was being executed, the apartment on the left at the top of the stairs was the intended target of the search. The officers entered apartment "C" and searched the premises, finding drug paraphernalia and a substance

that was later determined to be cocaine. The officers then arrested defendants, who were both present during the search.

The trial court denied defendants' motions to quash the warrant and suppress the evidence, noting that, because the officers verified the apartment with Thomas, the search warrant was not unconstitutionally vague. The trial court also denied defendants' motions to reconsider the denial of their motions to quash and suppress.

Defendants had a joint, stipulated bench trial. The parties stipulated that the search warrant directed the officers to search 230 Crystal Street, Apartment D, Cary, Illinois; and that defendants were present during the search. The parties also stipulated that various items, including material that was suspected of being cocaine and drug paraphernalia, were found in the apartment, and that there was a proper foundation to introduce these items into evidence. The parties also stipulated that there was a proper chain of custody for the alleged cocaine and that it was tested by a forensic chemist who found the substance to be cocaine.

The trial court found defendants guilty. The trial court denied defendants' motions for new trials, based on defendants' arguments that the trial court erred by denying their motions to quash the search warrant and suppress the evidence. After sentencing hearings, the trial court sentenced both defendants to eight years' imprisonment. These timely appeals followed, which were consolidated by this court.

## II. ANALYSIS

On appeal, defendants argue that the trial court erred by denying their motions to quash the search warrant and suppress the evidence seized. Both defendants argue that their rights under the Illinois and United States Constitutions were violated because the search warrant left the executing officers with doubt and impermissible discretion in determining the premises to be searched, in that they executed the search warrant at an apartment that was not listed on the search warrant. Defendant Fahey also argues that the executing officers were left with doubt and impermissible discretion in determining the premises to be searched because the search warrant failed to describe with sufficient particularity the premises to be searched.

Review of a ruling on a motion to quash a search warrant and suppress evidence can present both questions of law and questions of fact. *People v. Lee*, 214 Ill. 2d 476, 483 (2005). On review, we must give deference to the trial court's findings of fact and will not disturb them unless they are against the manifest weight of the evidence. *People v. Sorenson*, 196 Ill. 2d 425, 431 (2001). In contrast, we review *de novo* the ultimate question of whether a motion to quash a search warrant

and suppress evidence should have been granted on a given set of facts. *People v. Luedemann*, 222 Ill. 2d 530, 542-43 (2006).

The fourth amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const., amend. IV. Similarly, under our state constitution, "[t]he people shall have the right to be secure in their persons, houses, papers[,] and other possessions against unreasonable searches[ ] [and] seizures." Ill. Const. 1970, art. I, §6. Illinois courts interpret this provision of our constitution in "limited lockstep" with the fourth amendment to the United States Constitution. *People v. Caballes*, 221 Ill. 2d 282, 313 (2006). As recently stated by this court:

> " 'Under this approach, [Illinois courts] will "look first to the federal constitution, and only if federal law provides no relief [will they] turn to the state constitution to determine whether a specific criterion—for example, unique state history or state experience— justifies departure from federal precedent." ' *Caballes*, 221 Ill. 2d at 309, quoting L. Friedman, *The Constitutional Value of Dialogue and the New Judicial Federalism*, 28 Hastings Const. L.Q. 93, 104 (2000)." *People v. Leggions*, 382 Ill. App. 3d 1129, 1132 (2008).

In this case, no party argues that we must depart from federal precedent. Therefore, we will interpret the quoted provisions from both constitutions as having the same meaning and effect.

"A valid search warrant must state with particularity the place to be searched and the persons or things to be seized." *People v. Gonzalez*, 316 Ill. App. 3d 354, 360 (2000); see 725 ILCS 5/108—7 (West 2006). This court explained: "The purpose of this requirement is to prevent the use of general warrants that would give police broad discretion as to where to search and what to seize." *People v. Mabry*, 304 Ill. App. 3d 61, 64 (1999). A description in a search warrant must leave the executing officer no doubt and no discretion as to the person or premises to be searched. *Mabry*, 304 Ill. App. 3d at 64. Thus, where a search warrant raises a question in an officer's mind as to which premises to search, the warrant should not be executed, because officers are prohibited from using their own discretion to determine which premises to search. See *People v. West*, 48 Ill. App. 3d 132, 135 (1977). Further, "[w]hen a search involves a building with multiple, separate units, the warrant must specify the precise unit that is the subject of the search to satisfy the particularity requirement." *United States v. White*, 416 F.3d 634, 637 (7th Cir. 2005), *cert. denied*, 546 U.S. 1197, 164 L. Ed. 2d 96, 126 S. Ct. 1393 (2006).

The case most on point to the one at bar is *West*, 48 Ill. App. 3d 132, in which the search warrant listed an address of 509 East Park

with a physical description of a white house. *West*, 48 Ill. App. 3d at 133. In actuality, the house at that address was green. *West*, 48 Ill. App. 3d at 133. The police officers conducted a search of the defendant's white house at 609 East Park. *West*, 48 Ill. App. 3d at 134. The appellate court held that the officers exercised a prohibited amount of discretion when executing the search warrant. *West*, 48 Ill. App. 3d at 135. The appellate court explained:

> "[T]he police officers were specifically commanded by the body of the warrant to search a residence at 509 East Park. The officers could only go to the '509' address from the face of the warrant and there was no direction that they proceed to search the '609' premises." (Emphasis omitted.) *West*, 48 Ill. App. 3d at 135.

The appellate court ruled that, because the search warrant required the police officers to use impermissible personal discretion, the error was not a mere technicality and the warrant should have been quashed. *West*, 48 Ill. App. 3d at 135; see also *People v. Bass*, 220 Ill. App. 3d 230, 240-41 (1991) (officers should have realized the infirmity of the search warrant before they executed it where the warrant was for the "first floor" of an apartment building and the officers knew that there were two apartments on the first floor of the apartment building).

In this case, just as in *West*, the executing officers searched a residence not listed on the search warrant and the warrant failed to describe with sufficient particularity the premises to be searched. There was a discrepancy in the search warrant, in that the warrant stated that apartment "D" was to the left at the top of the stairs. In actuality, apartment "C" was to the left at the top of the stairs. As in *West*, the warrant in this case was ambiguous when the officers attempted to execute it, leaving doubt in the officers' minds as to which apartment to search. Such doubt was manifested in the officers' request for direction from Thomas. Thomas used his discretion and directed the officers to search apartment "C" in contradiction to the express direction of the warrant. This was an impermissible use of discretion as a matter of law. See *Jones v. Wilhelm*, 425 F.3d 455, 463 (7th Cir. 2005) ("Where a warrant is open to more than one interpretation, the warrant is ambiguous and invalid on its face and, therefore, cannot be legally executed by a person who knows the warrant to be ambiguous").

We believe that upon discovery of the ambiguity, Thomas should have contacted the judge who had authorized the search warrant, informed the judge of the ambiguity, requested instructions regarding any necessary change, and subject to the judge's approval, amended the search warrant to reflect the new apartment letter or to redact the

apartment letter altogether. See *People v. Trantham*, 55 Ill. App. 3d 720, 722-23 (1977) (the appellate court upheld a search warrant initially authorizing police officers to search apartment No. 9, after it was altered by telephone by the authority of the issuing judge when it was discovered that the apartment intended to be searched was No. 2, and not No. 9).

In reply to both defendants' briefs, the State cites *People v. McCarty*, 223 Ill. 2d 109 (2006), but *McCarty* is distinguishable from the case at bar. In *McCarty*, a judge issued a search warrant authorizing the search of: " 'the trailer of [the defendant] located approximately 3/4 of a mile south of the intersection of Kinlou Rd[.] [and] O'Leary Rd[.,] being the 3rd trailer east of O'Leary Rd[.,] and a camper located in the woods east of the trailer, including outbuildings, motor vehicles[,] [and] occupants.' " *McCarty*, 223 Ill. 2d at 143. The police officers actually searched the fourth trailer. *McCarty*, 223 Ill. 2d at 143-44. However, the police officers did not know the trailer they searched was not the third trailer, because they did not see the second trailer and the search warrant did not contain a postal address. *McCarty*, 223 Ill. 2d at 144-46, 149. Therefore, the police officers in *McCarty* did not know of the ambiguity contained in the search warrant when they executed the search. In this case, the police officers were well aware of the ambiguity when they executed the search. Unlike in *McCarty*, the search warrant in this case provided the specific address of apartment "D" yet stated that it was to the left of the stairs when, in actuality, apartment "C" was to the left. The police officers knew that apartment "C" was to the left of the stairs, so, using Thomas's direction and discretion, they went outside the search warrant and the supporting affidavit to resolve this ambiguity. Further, in *McCarty* a police officer who executed the search warrant could positively identify the correct trailer because he had served the defendant papers there in the past. *McCarty*, 223 Ill. 2d at 151. In this case, Thomas could not positively identify the correct apartment, because he did not have sufficient information to do so. He had never been inside the apartment building and did not know precisely where the informant had purchased the drugs. The fact that he had seen the blinds of the left apartment "suck" in and saw children look out the window and yell led to mere speculation that it was the apartment the informant entered, especially when the informant told Thomas that the apartment was apartment "D." Further, the fact that the letters on the doors were "obscured" does not change the fact that the officers and Thomas clearly saw the letter "D" on the door to the right and the letter "C" on the door to the left, in contradiction to the language of the search warrant. Accordingly, *McCarty* is clearly distinguishable.

While citing *McCarty*, the State notes that *McCarty*, 223 Ill. 2d at 151, quotes *People v. Burmeister*, 313 Ill. App. 3d 152, 158 (2000), for the proposition that " '[i]naccuracies will not necessarily invalidate a warrant if the officer applying for the warrant also executed the warrant.' " We have no disagreement with this basic proposition and we need not distinguish *Burmeister*, because there we affirmed the trial court's order granting the defendants' motions to quash the arrests and suppress evidence discovered pursuant to an unlawful search warrant. *Burmeister*, 313 Ill. App. 3d at 159.

In reply to both defendants' briefs, the State cites *Maryland v. Garrison*, 480 U.S. 79, 87, 94 L. Ed. 2d 72, 82, 107 S. Ct. 1013, 1018 (1987), for the "good-faith exception," that is, the proposition that there is "some latitude for honest mistakes that are made by the officers in the dangerous and difficult process of making arrests and executing search warrants." However, the State ignores that the good-faith exception applies only when the officer believed at the time he executed the search warrant that he was searching the one and only place described and the insufficiency of the search warrant was discovered only *after* it was executed. See *Garrison*, 480 U.S. at 87, 94 L. Ed. 2d at 82, 107 S. Ct. at 1018.

For example, in *Garrison*, a search warrant appeared to assume that the third floor of an apartment building contained only one apartment, and it authorized a search of that apartment. *Garrison*, 480 U.S. at 81, 94 L. Ed. 2d at 78, 107 S. Ct. at 1015. The search warrant also stated that the third-floor apartment belonged to McWebb. *Garrison*, 480 U.S. at 81, 94 L. Ed. 2d at 78, 107 S. Ct. at 1015. After beginning the search and finding contraband, the police officers realized that there were actually two apartments on the third floor and that they were in the wrong one. *Garrison*, 480 U.S. at 81, 94 L. Ed. 2d at 79, 107 S. Ct. at 1015. The police officers did not know before the search began that there was an ambiguity in the warrant or that they were searching the wrong apartment. *Garrison*, 480 U.S. at 80, 94 L. Ed. 2d at 78, 107 S. Ct. at 1014. The defendant was in the apartment where the contraband was found. *Garrison*, 480 U.S. at 81, 94 L. Ed. 2d at 79, 107 S. Ct. at 1015. The Supreme Court stated that the issue was whether the officers' failure to realize the overbreadth of the search warrant was objectively reasonable. *Garrison*, 480 U.S. at 88, 94 L. Ed. 2d at 83, 107 S. Ct. at 1018. The Supreme Court upheld the search, focusing on the fact that the officers did not know of the ambiguity prior to the search, stating, "[i]f the officers had known, or should have known, that the third floor contained two apartments before they entered the living quarters on the third floor, and thus had been aware of the error in the warrant, they would have been obligated to

limit their search to McWebb's apartment." *Garrison*, 480 U.S. at 86, 94 L. Ed. 2d at 82, 107 S. Ct. at 1018. In contrast to the officers in *Garrison*, the officers in this case knew, *before* they entered apartment "C," that there was a blatant ambiguity in the warrant. Therefore, the good-faith exception does not apply in this case, because, although Thomas testified that he was certain that the apartment to the left was the apartment to be searched, he and the officers knew of the infirmity of the warrant before they executed it. They knew that the apartment to the left was not apartment "D." See also *Bass*, 220 Ill. App. 3d at 240-41.

In reply to both defendants' briefs, the State also contends that the officers could not have returned to the magistrate who issued the search warrant and asked for an amended search warrant upon discovering the discrepancy at issue, because the delay could have "resulted in the destruction of evidence or in a violent response when the officers returned."

The State bears the burden of demonstrating that exigent circumstances justify a warrantless entry into a private residence. See *People v. Wimbley*, 314 Ill. App. 3d 18, 24 (2000). The guiding principle in determining if exigent circumstances justify a warrantless entry into a residence is the reasonableness of the officers' actions, and each case is based upon the totality of the circumstances known to the officers at the time of the warrantless entry. *Wimbley*, 314 Ill. App. 3d at 24. The potential destruction of narcotics does not constitute exigent circumstances sufficient to justify a warrantless entry unless the police officers have particular reasons to believe that the evidence will be destroyed. *Wimbley*, 314 Ill. App. 3d at 28. Here, the record reflects no evidence that the police officers had "particular reasons" to believe that the evidence would be destroyed. See *Wimbley*, 314 Ill. App. 3d at 28. Therefore, the State's argument fails.

In its reply brief to defendant Fahey's brief, the State cites *People v. Vanlandingham*, 223 Ill. App. 3d 362 (1991), and *People v. Powless*, 199 Ill. App. 3d 952 (1990), contending that we must affirm the trial court's decision because the search warrant contained a mere technical error. However, these cases are factually distinguishable from the case at bar. The error in the warrant in *Vanlandingham* had nothing to do with the location of the place to be searched; rather, the warrant erroneously omitted the date upon which it was issued. *Vanlandingham*, 223 Ill. App. 3d at 376. In the case at bar, the error in the warrant related to the location of the search. Therefore, it was not merely technical as was the error in *Vanlandingham*. See *Mabry*, 304 Ill. App. 3d at 65 (at the very least, a search warrant must enable the police to identify the place intended to be searched).

In *Powless*, the address on the warrant was 2845 Reed Street, but the actual house to be searched was 2845 Tenth Street. However, the address was on the unattached garage belonging to the house and the house faced Reed Avenue. *Powless*, 199 Ill. App. 3d at 953-54. Therefore, "the police officers knew which building they intended to search, and there were no other buildings in the area which matched the description given in the search warrant." *Powless*, 199 Ill. App. 3d at 957. Therefore, in *Powless*, the warrant identified "the place to be searched to the exclusion of all others." *Mabry*, 304 Ill. App. 3d at 65. There was no evidence that the officers who executed the warrant had any doubt or exercised any discretion as to the premises they were authorized to search. *Powless*, 199 Ill. App. 3d at 957. In the case at bar, the warrant identified apartment "D on the left"; however, apartment "C" was on the left. Thus, the warrant created an ambiguity and confusion as to which apartment was to be searched. Depending upon which descriptive fact was chosen, the apartment's location, to the exclusion of all other locations, was not clear and unambiguous. Therefore, *Powless* does not apply. We determine the trial court erred in failing to quash the search warrant and suppress the evidence obtained in the search. We therefore determine the trial court erred in entering judgments of conviction of these charges.

Because the State cannot prove defendants guilty of the charges on remand without the suppressed evidence, we reverse defendants' convictions and sentences. See *People v. Smith*, 315 Ill. App. 3d 772, 779 (2000).

The judgments of the circuit court of McHenry County are reversed.

Reversed.

ZENOFF, P.J., and HUTCHINSON, J., concur.