# Illinois Official Reports

## Appellate Court

*People v. Harris*, 2015 IL App (1st) 132162

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. AARON HARRIS, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-13-2162 |
| Filed | June 17, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CR-3946; the Hon. Evelyn B. Clay, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Michael Gentithes, all of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg and Aaron R. Bond, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE MASON delivered the judgment of the court, with opinion.<br>Justices Lavin and Hyman concurred in the judgment and opinion. |

**OPINION**

¶ 1    Following a jury trial, defendant Aaron Harris was convicted of possession of cannabis and sentenced to 24 months of probation. On appeal, Harris argues that the trial court erred in denying his pretrial motion to quash his arrest and suppress evidence obtained pursuant to an anticipatory search warrant. Specifically, Harris contends that the police improperly executed the search by arresting him before he opened a package containing narcotics that had been fitted by law enforcement with an electronic monitoring and breakaway filament device. Additionally, Harris claims that the State did not prove his knowing possession beyond a reasonable doubt and that the trial court improperly assessed fees with respect to credits accrued during incarceration. Finding that the trial court improperly denied the motion to quash defendant's arrest and suppress evidence, we reverse.

¶ 2                                            BACKGROUND

¶ 3    On February 21, 2011, Harris was charged with possession of between 500 and 2,000 grams of cannabis and possession with intent to deliver the same after an arrest based on an anticipatory search warrant. Prior to trial, Harris filed a motion to quash his arrest and suppress evidence, alleging that the execution of the anticipatory search warrant was not supported by probable cause because the warrant's triggering event–the opening of the package–had not occurred.

¶ 4    The parties proceeded directly to legal argument in support of their written memoranda without calling any witnesses or introducing any evidence. The undisputed facts of Harris's arrest are as follows.

¶ 5    On February 21, 2011, law enforcement officers working on the Chicago police department's narcotics section package interdiction team intercepted a FedEx package that had been shipped priority overnight from California and required no signature upon receipt. The package was addressed to "S. Harris, 6629 North Kolmar, Lincolnwood, Illinois." Harris's grandmother owned this single-family home, but she had lived in a nursing home for several years. After a canine's behavior indicated the presence of narcotics in the package, officers obtained a search warrant to open the package. The four heat-sealed plastic bundles inside the package tested positive for cannabis. At 1 p.m., the officers obtained an anticipatory search warrant to search:

> "S. Harris or anyone taking possession of the Fed Ex Priority Overnight Parcel *** and to enter and search 6629 North Kolmar Ave *** or any premises or vehicle that the Fed Ex Parcel *** is brought into once the parcel has been delivered by law enforcement personnel and seize Cannabis, proof of residency, *** and any other evidence which have been used in the commission of or which constitutes evidence of the Possession of Cannabis."

¶ 6    The complaint for the anticipatory search warrant stated that "this search warrant will only be executed if the above described Fed Ex parcel *** is *accepted* into a location or vehicle" (emphasis added). The complaint explained that based on the officer's experience with hundreds of package interdiction search warrants, the parcel would likely move to another location or be received by a person other than the person to whom it was addressed.

¶ 7    At the same time they obtained the anticipatory search warrant, the officers obtained an order to install an electronic monitoring and breakaway filament device in the package. The device sends an electronic signal when the package is standing still, moving, or opened. The order approving the warrant stated that the petition and attached affidavit explained facts sufficient to show probable cause that placement and monitoring of this device "will produce evidence of a crime and assist in the identification of a perpetrator and possible co-conspirators." The face of the search warrant did not mention the order or installation of the device.

¶ 8    After obtaining the warrant, the officers repackaged the box and made a controlled delivery at approximately 2:10 p.m. the same day. Officer Sterling Terry, working in an undercover capacity as a FedEx employee, brought the package to the front door of the residence, rang the doorbell, and left the package on the front porch while other officers maintained surveillance of the location.

¶ 9    Less than an hour later, Harris pulled into the driveway of the residence, exited the vehicle while it was running, picked up the package, and immediately returned to his vehicle. He placed the package in the rear passenger seat of his otherwise empty vehicle. The officers did not monitor or receive a signal from the breakaway filament that the package had been opened or that it was moving.

¶ 10    By radio communications, the officers then decided to execute the warrant. Two officers approached the vehicle, arrested Harris, and retrieved the package. After he was given *Miranda* warnings, Harris said he understood them and made statements to the officers regarding his knowledge of the contents of the package and its place of origin. The officers made no recording or memoranda of these statements, and the officers did not include the statements in their police report. The police report recited that Harris was "arrested after he took into his possession a Fed Ex parcel that he *knew* contained cannabis and placed it into his vehicle and attempted to drive away" (emphasis added).

¶ 11    In support of his motion to suppress, Harris argued that the officers who arrested and searched him did not have probable cause to do so prior to the anticipatory warrant's triggering event. Specifically, Harris maintained that the warrant's triggering event, in light of the installation of the electronic monitoring and breakaway filament, was the opening of the package. Harris contended that because he did not open the package, the evidence, statements, and witnesses obtained as a result of the premature execution of the warrant should be suppressed.

¶ 12    According to the State, the anticipatory search warrant's triggering condition was the delivery of the package to the listed address. Further, the State contended that the warrant merely required acceptance and that this condition was satisfied when Harris retrieved the package, placed it in his vehicle, and put his vehicle in reverse. Additionally, the State argued that even if the search was not lawful pursuant to the warrant, the good-faith exception applied, precluding the suppression of evidence obtained as a result of the search.

¶ 13    The trial court denied the motion to suppress. The court agreed that the search warrant expressly authorized a search once the package had been accepted into a location or vehicle. The court found that the warrant's requirements were met because the officers observed the delivery of the package at the address set forth in the warrant and because the order for the electronic monitoring device was a separate addendum to the warrant. The trial court also found that, based on the totality of the circumstances, Harris satisfied the warrant's triggering

condition when he picked up the package from the single-family home and brought it into his vehicle "as if in the manner [of] expecting the delivery."

¶ 14    Harris also filed a pretrial motion to suppress his statements to police, alleging that he requested the assistance of an attorney before making inculpatory statements to the police regarding the package. After an evidentiary hearing, the trial court denied this motion as well, a ruling Harris does not challenge on appeal.

¶ 15    The matter proceeded to a jury trial. During trial, the witnesses, including Harris, testified consistently with the stipulated facts above. The following additional evidence was presented.

¶ 16    Officer Terry testified that a field test of the intercepted package indicated that it contained approximately 1,350.5 grams of cannabis with a street value of approximately $16 per gram. Officer Terry observed Officer Jeffrey Show draft the anticipatory warrant, which was a type he had used in past investigations. Officer Terry and his partners placed the monitoring device within the package because "it alerts us to when the box is sitting still, or when it's moving, or when it's opened." Each of the six officers on the team then took a role for making a "controlled delivery" of the package. The officers had no prior information suggesting that Harris unlawfully possessed drugs or engaged in drug-related activities.

¶ 17    Officer Nick Lymperis, one of the six officers surveying the scene, observed a man, later identified as Harris, exit his vehicle after pulling into the driveway. Officer Lymperis did not observe Harris examine the package itself, knock on the door, or look around the house before bringing the package back to his running vehicle. The distance between Harris's vehicle and house was about 20 feet, and Harris held the package for about 30 seconds. After Harris put his vehicle in reverse, the officers decided by radio communications to converge almost immediately by pulling their vehicles into the driveway. The filament device never indicated that the package had been opened. The officers decided to arrest Harris because they did not want to get into a car chase in an unfamiliar area around school dismissal time. No evidence was presented as to the proximity of any schools to the site of the arrest.

¶ 18    After police blocked Harris from exiting the driveway, Officer Lymperis walked up to the driver's side of the vehicle and announced his office. He handcuffed Harris, brought Harris back to his vehicle, and gave him *Miranda* warnings. According to Officer Lymperis, Harris stated he understood his *Miranda* rights and then "freely" told him about the package, stating that "he had a friend in California who agreed to help him financially and was going to send him some cannabis to sell so he can make money" and that "he thought there was three ounces of cannabis in the box." According to Officer Lymperis's testimony on cross-examination, Officer Humpich also heard these statements. Neither Officer Lymperis nor Officer Humpich taped, recorded, or wrote out these statements for Harris to sign.

¶ 19    After the State rested, Harris made a motion for a directed finding of not guilty, arguing that the package was not sent to him because it was addressed to "S. Harris." The trial court denied the motion.

¶ 20    The defense called Dale Harris, Harris's father, as a witness. Dale is a Chicago police officer, and the home at 6629 North Kolmar belongs to Sylvia Harris, Dale's mother and Harris's grandmother. Dale keeps personal possessions at the home even though no one has lived there for a number of years. He stated that many people have access to and keys to the home, including his siblings, children, uncles, nieces, nephews, cleaning crews, and realtors. He and his children, including Harris, make regular trips past the house, but Harris did not have keys to the house.

¶ 21    Harris also testified. On February 21, 2011, he drove past 6629 North Kolmar on his usual route to the art store from his mother's house. He noticed the package as he drove by, backed up, and then pulled into the driveway. Harris turned his vehicle's engine off, went to the front porch, examined the package's address, brought it back to his vehicle, and then restarted the engine.

¶ 22    According to Harris, after he put the vehicle in reverse, six to eight cars pulled into the driveway behind him. He testified that he was put on the ground with force for about five minutes after officers told him to exit the vehicle. Then the officers brought him to the front porch, gave him *Miranda* warnings, and asked him about the package and about the police identification on his vehicle. He was next brought into Officer Lymperis' vehicle, read his *Miranda* rights again, and questioned again. At that point, Harris said he told Officer Lymperis that he wanted to speak with his lawyer.

¶ 23    Harris denied making any statements concerning the package, its contents, or its sender. He stated that he knew his aunt received packages at the home but that he was not expecting delivery of the package. Harris testified that the officers later brought him to a room at the Homan and Filmore organized crime division facility and handcuffed him for four to five hours, during which time no one questioned him.

¶ 24    The jury found Harris guilty of possession of cannabis but not guilty of possession of cannabis with intent to deliver. Harris then filed a motion for a new trial, based in part on the trial court's denial of the motion to quash arrest and suppress evidence. The trial court denied the motion and sentenced Harris to two years of probation. Harris timely appealed.

¶ 25                                                    ANALYSIS

¶ 26    On appeal, Harris raises three issues: (i) his arrest should have been quashed and the evidenced obtained suppressed because it was premised upon police officers' premature execution of an anticipatory warrant, (ii) his knowledge of the contents of the package was not proven beyond a reasonable doubt, and (iii) the trial court improperly assessed fees accrued during his incarceration. Because the first issue is dispositive, we address only that issue and find that the trial court erred in denying Harris's motion to quash arrest and suppress evidence.

¶ 27    Both parties agree that because the issue presented on appeal concerns the legal conclusion of whether suppression was warranted, the standard of review is *de novo*. *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006); *People v. Carlson*, 185 Ill. 2d 546, 551 (1999). Although a court's ruling on a motion to quash arrest and suppress evidence generally is subject to reversal only if the ruling is manifestly erroneous, where the trial court has applied the law to uncontroverted facts, the case presents a question of law that is reviewed under a *de novo* standard. *People v. Carrera*, 321 Ill. App. 3d 582, 588-89 (2001).

¶ 28    The fourth amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const., amend. IV. The Illinois Constitution similarly protects against unreasonable searches and seizures. Ill. Const. 1970, art. I, § 6. A valid search warrant must state with particularity the place to be searched and the persons or things to be seized. *United States v. Grubbs*, 547 U.S. 90, 97 (2006); see also 725 ILCS 5/108-7 (West 2012) (requiring the place or person to be searched and the items to be seized to be "particularly described in the warrant").

¶ 29        As relevant to this case, an anticipatory search warrant is a warrant based upon an affidavit showing probable cause that at a future time certain evidence of a crime will be located with an identified person or in a specific place. *People v. Bui*, 381 Ill. App. 3d 397, 406 (2008); *Carlson*, 185 Ill. 2d at 549; 2 Wayne R. LaFave, Search and Seizure § 3.7(c) (5th ed. 2012). The execution of an anticipatory search warrant is usually subject to a condition precedent other than the mere passage of time, known as a "triggering condition." *Grubbs*, 547 U.S. at 94. "The requirement that certain events must take place before the execution of an anticipatory search warrant assures that a search will take place *only* when justified by probable cause." (Emphasis in original.) *Carlson*, 185 Ill. 2d at 554; see also *People v. Galdine*, 212 Ill. App. 3d 472, 481-82 (1991) (judge must ensure that anticipatory warrant will not be executed prematurely by making its execution contingent on occurrence of specific events or passage of specific period of time). A warrant's triggering condition need not be reflected on the face of the warrant and may be included in supporting affidavits attached thereto. *Grubbs*, 547 U.S. at 96-97; accord *United States v. Miggins*, 302 F.3d 384, 395 (6th Cir. 2002). However, anticipatory warrants should be narrowly drawn to "avoid premature execution as a result of manipulation or misunderstanding by the police." *United States v. Brack*, 188 F.3d 748, 757 (7th Cir. 1999). The purpose of defining a triggering event in an anticipatory warrant is to ensure that officers serve an "almost ministerial" role in deciding when to execute the warrant. *United States v. Ricciardelli*, 998 F.2d 8, 12 (1st Cir. 1993); see also *People v. Curry*, 100 Ill. App. 3d 405, 410 (1981) ("the person to be searched must be described with sufficient particularity to avoid leaving the executing officer with any doubt or discretion").

¶ 30        In this case, both Harris and the State agree that the search warrant's triggering event required the package to be "accepted" in order for probable cause to exist. The parties' dispute centers on whether the electronic monitoring and opening filament device must have been used to establish that the triggering event occurred.

¶ 31        Under the circumstances here, we find that the officers were required to use the electronic monitoring device to identify the anticipatory warrant's triggering event for two reasons. First, the device provides the necessary objective evidence to particularly identify the person or property to be searched, as general warrants are constitutionally prohibited. *Grubbs*, 547 U.S. at 96; *Carlson*, 185 Ill. 2d at 554. Additionally, the objective evidence from the device limits the exercise of law enforcement's unfettered discretion to determine whether the warrant's triggering event has actually occurred. See *People v. Urbina*, 393 Ill. App. 3d 1074, 1079 (2009) (the executing officers searched a residence not listed on the search warrant, and the warrant failed to describe with sufficient particularity the premises to be searched). Because, as we discuss in more detail below, the officers executed the warrant prior to the triggering event, their conduct was not authorized by the warrant and Harris's motion to quash his arrest and suppress evidence should have been granted.

¶ 32        Our decision is informed by our previous analysis in *People v. Bui*, 381 Ill. App. 3d 397 (2008). In *Bui*, law enforcement intercepted a package containing narcotics that was addressed to the defendant at a nail salon. *Id.* at 402. Prior to seeking the warrant, officers determined the sender's name and return address on the package were fictitious. *Id*. The officers obtained permission to place an electronic monitoring and filament device in the package, as well as an anticipatory search warrant allowing them to search " 'Duoc Bui or anyone taking control of the [package],' " the nail salon, " 'and/or any other location that the parcel is accepted into.' "

*Id*. at 401. During their controlled delivery of the package, the officers watched as a nail salon employee signed for and placed the package under a counter. *Id*. at 402. Nearly four hours later, the defendant arrived at the nail salon, picked up the package and drove away. *Id*. The officers followed the defendant as he took the package with him into a new vehicle and then into a private residence. *Id*. Shortly thereafter, the electronic monitoring and filament device alerted the officers that the package had been opened, and the officers executed the warrant. *Id*. at 403. They entered the home, arrested the defendant, and discovered additional narcotics in the defendant's bedroom where he had opened the package. *Id*.

¶ 33    Seeking to suppress the evidence recovered in the search, the defendant argued that the warrant authorized a search once the package was received and that the officers exceeded the scope of the warrant when they searched the defendant's bedroom at a different location hours after the nail salon employee accepted delivery of the package. *Id*. at 405-06. The State argued that the officers properly executed the search warrant at the defendant's home. *Id*. at 409. Apropos of its position here, the State contended in *Bui* that if the package was not opened, the warrant did not authorize a search of any location and, in particular, that the warrant did not authorize police to search the nail salon and the unsuspecting receptionist who accepted delivery of the package.

¶ 34    In finding that the warrant was validly executed, this court reasoned that the defendant's interpretation of "accept" as used in the application for the warrant was "overly technical" and not consistent with the purpose of the warrant when considered in the context of the facts and circumstances of the case. *Id*. This court ruled that "accept" meant "to receive *and open* the package" because the package was addressed to a public place and because the officers installed the electronic monitoring device in the package precisely for the purpose of identifying the person who opened it. (Emphasis added.) *Id*. at 409-10. Therefore, the court held that the search was properly executed at a location other than where the package was delivered and upon the defendant's opening of the package as indicated by the device. *Id*. at 410.

¶ 35    Harris argues that the officers prematurely executed the search warrant when they arrested him before he opened the package, as indicated by the electronic monitoring and opening filament device. Contrary to the position it took in *Bui*, the State contends here that the "overly technical" definition of "accept" rejected in *Bui* authorized the officers to execute the warrant when *any* individual brought the unopened package into a building or vehicle. The State further argues that "accept" includes the "intent to retain" the package and that Harris manifested an intent to retain the package by placing it in the backseat of his car.

¶ 36    We reject the State's broad interpretation of "accept" as it would cast a wide net over the categories of people and locations subject to search and vest equally broad discretion in the officers to determine when the required triggering event had occurred. If we view the anticipatory search warrant in this case independent of the information provided by the device, as the State urges us to do, we would find the required particularity lacking as the warrant fails to specify in any meaningful way the person or location to be searched. For example, under the State's expansive definition of "accept" urged here, the officers could have arrested and searched (i) a next-door neighbor who, seeing the package on the front steps of the unoccupied home, brought it inside her home to later give to a family member, (ii) the opportunistic thief who, observing an unattended package on the steps, decided to make off with it with the obvious "intent to retain" it, or (iii) a realtor who, upon arriving with a prospective buyer,

brought the package inside the home for safekeeping. In other words, the State's position is that the officers had broad discretion to arrest and search any number of people who might come into contact with the package without opening it, a result at odds with the "almost ministerial" role officers are intended to play in the execution of an anticipatory warrant. *Ricciardelli*, 998 F.2d at 12. As the foregoing hypotheticals illustrate, this interpretation of "accept" deprives the warrant of the particularity required to uphold its validity. See *People v. Reed*, 202 Ill. App. 3d 760, 763 (1990) (search warrant that mentioned only one specific name and then encompassed all " 'other persons present in a public bar' " held defectively open-ended and unconstitutional).

¶ 37      Here Harris was in no different position than the receptionist in *Bui*. The package was not addressed to him and nothing in his conduct in putting the unopened package in the backseat of his car indicated that he was aware of its contents. Police further had no information about Harris and, in particular, no evidence of his involvement in using or selling drugs. Unlike *Bui*, the record here does not disclose that police had investigated the return name and address on the package to determine if they were fictitious. Thus, the only conduct on Harris's part reflected in the record–picking up the package and putting it in his car–was insufficient, under the definition of "accept" adopted in *Bui*, to satisfy the warrant's triggering event. And because the triggering event had not occurred, the officers lacked probable cause in executing the anticipatory search warrant and the evidence obtained as a result must be suppressed. See *People v. McCauley*, 163 Ill. 2d 414, 448 (1994).

¶ 38      If the existence of probable cause rested solely on the fact that some unidentified person retrieved the package, there would have been no reason to request the order permitting installation of the device. See *People v. Sutherland*, 223 Ill. 2d 187, 219 (2006) (noting that warrants and their supporting documents are not to be read in a hyper-technical manner but, rather, in a commonsense fashion); see also *Bui*, 381 Ill. App. 3d at 410 (stating that use of the device demonstrates that "acceptance" meant to receive and open the package because "[w]ere this not the case, we fail to see why police would seek to place a monitoring device inside the package"). The electronic monitoring device order, signed at the same time as the search warrant, clearly stated that "placement and monitoring of the [device] *** will produce evidence of a crime and assist in the investigation." The officers' failure to use the device for this purpose was contrary to the justification for the warrant.

¶ 39      We do not hold that under any and all circumstances the opening of a package equipped with an electronic monitoring device must occur before an anticipatory warrant can be executed. Each case must be decided on its own facts. But where, as here, the package moved for only a few seconds, the device was not monitored at all or used to track the movement or opening of the package, and the officers had no prior information connecting Harris to the package or its contents, the officers acted on insufficient objective evidence of the warrant's triggering event and prematurely executed the search without probable cause. See *Illinois v. Gates*, 462 U.S. 213, 232-33, 238 (1983) (holding that a probable cause determination is a "practical, common-sense decision" that should be based on a "totality-of-the-circumstances analysis" within the "particular factual contexts").

¶ 40      The State argues that even if we find that the warrant contemplated that the package would be opened prior to its execution, we should nevertheless find that the officers acted reasonably in executing the warrant. The State invokes the good-faith exception to the exclusionary rule

and contends that the premature execution of the warrant here does not mandate suppression of the evidence recovered as a result. We disagree.

¶ 41     Evidence obtained as a result of an illegal search must be excluded under the "fruit of the poisonous tree" doctrine. *McCauley*, 163 Ill. 2d at 448. But the good-faith exception to the exclusionary rule applies when law enforcement officers rely on a reasonable belief that the search is authorized under the warrant. *Massachusetts v. Sheppard*, 468 U.S. 981, 987-88 (1984); *Bui*, 381 Ill. App. 3d at 416-17. The Illinois Code of Criminal Procedure of 1963 codifies this exception:

> "If a defendant seeks to suppress evidence because of the conduct of a peace officer in obtaining the evidence, the State may urge that the peace officer's conduct was taken in a reasonable and objective good faith belief that the conduct was proper and that the evidence discovered should not be suppressed if otherwise admissible. The court shall not suppress evidence which is otherwise admissible in a criminal proceeding if the court determines that the evidence was seized by a peace officer who acted in good faith." 725 ILCS 5/114-12(b)(1) (West 2010).

¶ 42     "Good faith" is defined to encompass circumstances where a peace officer obtains evidence "pursuant to a search or an arrest warrant obtained from a neutral and detached judge, which warrant is free from obvious defects other than non-deliberate errors in preparation and contains no material misrepresentation by any agent of the State, and the officer reasonably believed the warrant to be valid." 725 ILCS 5/114-12(b)(2) (West 2010). The good-faith exception does not apply to a search warrant that is so facially overbroad that police officers could not reasonably believe it was valid. *Reed*, 202 Ill. App. 3d at 764 (citing *United States v. Leon*, 468 U.S. 897, 923 (1984)).

¶ 43     Here, the officers could not reasonably have believed they had authority to arrest Harris pursuant to the anticipatory warrant because they (i) personally participated in preparing the application for the warrant, including its representation that installation of the electronic monitoring and breakaway filament devices would likely "produce evidence of a crime," (ii) knew that the device had produced no information that the package had been opened, and (iii) possessed no prior knowledge connecting Harris to the package or its contents. The officers were aware of the ambiguity reflected on the face of the warrant, which broadly authorized the search of "S. Harris or anyone taking possession of" the package, when viewed independently of the complaint for the warrant and the order authorizing installation of the electronic device. See *Urbina*, 393 Ill. App. 3d at 1079 (the good-faith exception did not apply because officers knew of ambiguity in the warrant before its execution); see also *Jones v. Wilhelm*, 425 F.3d 455, 463 (7th Cir. 2005) ("Where a warrant is open to more than one interpretation, the warrant is ambiguous and invalid on its face and, therefore, cannot be legally executed by a person who knows the warrant to be ambiguous."). Further, at the time the warrant was issued, *Bui* had been the law in Illinois for several years. Thus, without any further information, officers could not have reasonably believed that the warrant authorized a search of anyone who picked up the package without opening it and the good-faith exception does not apply.

¶ 44     Having determined that the warrant was executed without probable cause and the evidence obtained as a result should have been suppressed, we next turn to the appropriate remedy. Harris requests outright reversal because the evidence is insufficient to sustain his conviction or, alternatively, remand for a new trial with directions that the suppressed evidence not be

admitted on retrial. Harris discusses no authority supporting either remedy. The State does not take a position on this issue.

¶ 45    The prospect of retrial raises double jeopardy concerns and requires us to assess the sufficiency of the evidence against Harris. *People v. Lopez*, 229 Ill. 2d 322, 367 (2008). Although the *double jeopardy clause* prohibits retrial to allow the State another opportunity to supply evidence it failed to present in the first trial, "[i]t does not *** preclude retrial where a conviction has been set aside because of an error in the proceedings leading to the conviction." *Id.* (citing *People v. Mink*, 141 Ill. 2d 163, 173-74 (1990) (defendant cannot be retried once a court has determined that the evidence at trial was insufficient to sustain the conviction)). As our supreme court observed in *People v. Olivera*:

> "[R]etrial is permitted even though evidence is insufficient to sustain a verdict once erroneously admitted evidence has been discounted, and for the purposes of double jeopardy all evidence submitted at the original trial may be considered when determining the sufficiency of the evidence." *People v. Olivera*, 164 Ill. 2d 382, 393 (1995) (citing *Lockhart v. Nelson*, 488 U.S. 33, 40 (1988)).

¶ 46    In assessing the sufficiency of the evidence here, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find all elements of the crime beyond a reasonable doubt. *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004); *People v. Butler*, 304 Ill. App. 3d 750, 755 (1999). Although Harris's statements must be suppressed in any retrial, they were sufficient, together with the other evidence adduced at trial, to sustain his conviction for possession of cannabis.

¶ 47    There are several appellate cases adopting the position that if the State cannot prevail on retrial without the suppressed evidence, the appropriate remedy is outright reversal. See *People v. Trisby*, 2013 IL App (1st) 112552, ¶ 19 (State could not prevail on retrial without drugs recovered from defendant's pocket in warrantless search unsupported by probable cause); *People v. Leigh*, 341 Ill. App. 3d 492, 497 (2003) (defendant's conviction for possession of a firearm by a felon reversed without remand where State could not prevail without the suppressed firearm); *People v. Elliot*, 314 Ill. App. 3d 187, 193 (2000) (reversing the defendant's conviction for possession of a controlled substance after finding that drugs seized from the defendant should have been suppressed and that the State could not prevail on remand without this evidence). But in these cases it was evidence of the crime itself that was suppressed. Thus, it was appropriate to reverse outright because without evidence of the commission of a crime, the prosecution could not proceed. *People v. Lara*, 2012 IL 112370, ¶ 17 (in criminal proceedings, the State must prove beyond a reasonable doubt that a crime was committed, the *corpus delicti*, and the identity of the person who committed the crime).

¶ 48    Here, in contrast, the State obtained a warrant to open the package addressed to "S. Harris" prior to its delivery and determined that it contained cannabis and, therefore, the State can establish the *corpus delicti* without Harris's suppressed statements. This evidence is admissible in any retrial as is evidence that Harris drove by his grandmother's house shortly after the package was delivered and retrieved the package and placed it–unopened–in the backseat of his car. While the sustainability of a conviction based on this evidence alone is questionable (see *People v. Hodogbey*, 306 Ill. App. 3d 555 (1999) (State failed to prove knowing possession of a controlled substance where defendant was arrested after placing on a table the unopened package addressed to him and delivered to his home)), double jeopardy

does not preclude retrial and so we remand for that purpose.

¶ 49                                    CONCLUSION

¶ 50        The trial court erred in failing to quash the arrest and suppress the evidence obtained in the search. Because the evidence was sufficient to sustain the conviction, we reverse and remand for a new trial.

¶ 51        Reversed and remanded.